IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JAMES D. MCINTYRE, #1283872 | § | |
| VS. | § | CIVIL ACTION NO. 6:13cv489 |
| J. RUPERT, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff James D. McIntyre, a prisoner confined at the Coffield Unit of the Texas prison system, proceeding *pro se*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983.  The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on June 13, 2013.  The Plaintiff filed an amended complaint (docket entry #9) on July 19, 2013.  On November 14, 2013, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985), wherein the Plaintiff was given the opportunity to fully discuss the factual basis of his claims.  Several prison officials were in attendance during the hearing, including Assistant Warden Larry Berger, Regional Grievance Officer Karen Norman and Coffield Unit Law Librarian Gayle Karriker.  All witnesses testified under oath.

The Plaintiff's lawsuit evolved out of his efforts to challenge his Ellis County conviction for indecency with a child by sexual contact as a lesser included offense of sexual assault of a child.  The conviction was affirmed.  *McIntyre v. State*, No. 10-06-00196-CR, 2007 WL 900089 (Tex. App. - Waco March 21, 2007, pet. ref'd).  He filed a petition for a writ of habeas corpus in federal court,

1

which was denied. *McIntyre v. Thaler*, No. 3-09-CV-1870-M, 2011 WL 2938239 (N.D. Tex. July 21, 2011).  In dismissing the case, the court noted that a set of objections were timely filed on July 18, 2011.  The court conducted a *de novo* review with respect to the objections that were timely filed. Other evidence that was not timely filed was reviewed only for plain error.  The Fifth Circuit subsequently denied his motion for a certificate of appealability.  *McIntyre v. Thaler*, No. 11-10808 (5th Cir. July 11, 2012).  The Plaintiff's motion for rehearing en banc was likewise denied.  *McIntyre v. Thaler*, No. 11-10808 (5th Cir. Dec. 5, 2012).

The Plaintiff testified during the *Spears* hearing that he attempted to file a petition for a writ of certiorari on March 4, 2013.  Defendant Karriker weighed the letter and told him the amount of postage to put on it.  He followed her instructions, but the letter was returned for insufficient postage on March 11, 2013.  He had problems immediately adding the remaining postage to the letter due to a unit lockdown, but he was eventually able to mail the letter.  On March 25, 2013, the Supreme Court returned the writ with the notation: "to be filed timely I needed - a notarized statement or a declaration setting forth the date of deposit."  On March 29, 2013, Karriker told him that she would not provide a notarized statement without a court order.  Karriker testified that she told the Plaintiff that he needed to obtain a notarized statement from mail room personnel.  The Plaintiff testified that he talked to Ms. Dorsey, in the mail room, who indicated she could provide a statement only saying that he deposited the letter for mailing on March 4, 2013.  The Plaintiff explained that the statement she offered was not sufficient since there was there was an issue of postage that needed to be addressed.  The Plaintiff testified that he submitted a statement to the Supreme Court.  The Court notes that the Supreme Court public website does not show that a petition for a writ of certiorari was ever filed by him.

The Plaintiff testified that Karriker instituted a no talking policy following their encounter.  The policy was begun during the last week of March or first week of April.  Before then, inmates in the law

2

library were permitted to talk to each other, as long as it was in a low voice.  Defendant Vestal, who was a member of the security staff in the law library, strictly enforced the no talking policy.  She would not talk to him and would not permit him to talk to other inmates.  She denied his requests for legal visits with other inmates.  Karriker testified that she was new to the law library at the Coffield Unit.  She was aware that the no talking policy had been in effect since 2005.  Her predecessor did not strictly enforce it.  She checked with access to court supervisory personnel in Huntsville and was told that the policy was system wide and that it should be enforced.

The Plaintiff complained that he was also denied same session or legal visits with inmates Adrian Duncan and Gregory Johnson.  His request to speak to inmate Adrian Duncan on May 23, 2013 was denied.  The explanation provided to him was that his request was not specific enough.  The Plaintiff characterized the denials as acts of retaliation.  In support of the claim, he noted that he had started working on a § 1983 lawsuit about problems he had submitting the petition for a writ of certiorari.  He wanted to talk to inmate Duncan because he had successfully filed a petition for a writ of certiorari.  Defendant Karriker testified that requests for same session or legal visits must be from both inmates.  The request was denied because Duncan did not articulate a reason for visiting with the Plaintiff.  He told her that he did not know why the Plaintiff wanted to talk to him.

The Plaintiff next complained that he was denied double law library sessions.  He noted that the previous law librarian allowed inmates to stay in the law library as long as they wanted to be there.  Karriker stopped this practice.  The Plaintiff argued that the practice was stopped as an act of retaliation after he started working on his § 1983 lawsuit.  Karriker testified that access to court rules do not provide for double sessions.  Inmates are scheduled for two hour sessions.  She added that inmates may be permitted to stay an extra hour at the end of the regularly scheduled two hour session, and the Plaintiff has never been denied the opportunity to spend an extra hour in the law library.

3

The Plaintiff next complained that he was denied a legal box as an act of retaliation for filing grievances. He had a legal box since 2006. The need for legal boxes is reviewed every six months. His legal box was taken from him in May 2013. It was taken a month before the end of the six month cycle. He was told that it was being taken because he did not have any active cases pending. On the other hand, he was permitted to have a medical box because he had injured his hand. The Plaintiff testified that the medical box was not sufficient because he knew of situations where inmates had their legal documents confiscated because they were stored in a medical box, as opposed to a legal box.

Warden Berger testified that inmates are permitted to have a legal box if they have a legal case pending. They are not entitled to have a legal box if they do not have a pending lawsuit. In such cases, inmates may store their legal documents in their regular property boxes. Excess property is subject to confiscation, thus inmates have to prioritize the items they want to keep in their possession.

The Plaintiff next complained that Mailroom Supervisor Misty Warren did not timely deliver mail to inmates. She likewise failed to timely mail outgoing legal mail. In his Northern District of Texas case, he was able to file some objections on July 18, 2011, but objections filed after that date were reviewed only for plain error.

The Plaintiff next complained that the Supreme Court Digest and Supreme Court Table of Cases are no longer updated. All new books were stopped in 2008. Pocket parts were stopped in May 2012. With the Supreme Court Digest and Supreme Court Table of Cases, he was able to look up cases by name. He acknowledged that the law library has computer based research tools, but he complained that he has to know the case citation to look up anything. He specifically mentioned the Supreme Court's recent decision in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). He believes that case could provide him help challenging his conviction, but he did not have the citation.

4

The Plaintiff finally complained that he was not timely provided a copy of the decision in *Evans v. State*, 299 S.W.3d 138 (Tex. Crim. App. 2009).  In his § 2254 case, the State filed an answer on February 19, 2010.  The case cited *Evans*.  He needed a copy of *Evans* in order to prepare a response.  He was initially provided the wrong case.  He did not receive the correct case until after the deadline for filing a response had expired.  Consequently, he was unable to address *Evans* in his reply, which was filed on May 6, 2010.

The Plaintiff testified that he sued Warden Rupert because he was the ultimate supervisor.  He sent a complaint to Rupert about Karriker on June 9, 2013.  He did not receive a response from Rupert, although he subsequently observed a copy of the letter in Karriker's possession.

<u>Discussion and Analysis</u>

The Plaintiff's lawsuit contains two broad claims involving allegations of denial of access to court and retaliation.  Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental rights to the courts."  *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  "While the precise contours of a prisoner's right of access to court remain obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."  *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993).  "[P]rison libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"  *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds*, 430 U.S. at 825).  The Supreme Court recently noted some of the limits on the right of access to court:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of thier confinement.

> Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355.  Prison officials may place reasonable limits on the right.  *See Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989).

To prevail on a claim that his right of access to court has been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendant's actions.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  In *Lewis v. Casey*, the Supreme Court stated that an inmate must show more than the inability to file a claim in order to succeed on an access to court claim; instead, he must show that he would have been able to bring a nonfrivolous claim with arguable legal merit -- he must show an actual injury.  518 U.S. at 351-53.

The Plaintiff initially complained that Defendant Karriker would not notarize a statement for him without a court order.  He acknowledged, however, that the Supreme Court advised him that he needed to submit either a notarized statement *or* a declaration setting forth the date he deposited the letter containing his petition for a writ of certiorari in the prison mail system.  Either option would have sufficed.  He was not limited to a notarized statement.  He could have satisfied the instructions simply by submitting a declaration informing the Supreme Court that he placed the letter in the prison mail system on March 4, 2013.  He further acknowledged that Karriker told him he could obtain a notarized statement from Ms. Dorsey, in the mail room, but he was not satisfied with the contents of statement that Ms. Dorsey would have provided.  In any event, Karriker cannot be held responsible for denying the Plaintiff access to court when he had the alternative of submitting his own declaration.

The first ground for relief also lacks merit because the Plaintiff has not shown harm.  He has not shown that Karriker's actions kept him from being able to pursue a nonfrivolous, arguable legal

claim.  The Fifth Circuit made the following finding regarding facts somewhat similar to the present

case:

> [Plaintiff] has not demonstrated that the claims he would have raised in his petition for
> discretionary review were arguable and nonfrivolous; he therefore cannot prove a
> constitutional violation.  Because he cannot prove a constitutional violation, judgment was
> appropriately awarded in favor of the defendants,  . . .

*Belton v. Turner*, 79 F. App'x. 66, 67 (5th Cir. 2003).  The Plaintiff had a petition for a writ of habeas

corpus rejected at both the district court and appellate court levels.  The Fifth Circuit denied his motion

for rehearing en banc.  He has not shown that he would have been able to file a petition for a writ of

certiorari containing claims that were arguable and nonfrivolous.  The Plaintiff's first claim fails to

state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact.

The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff next complained about Defendant Karriker implementing a no talking policy in

the law library.  The case law is clear that the claim is frivolous.  *See Hall v. Hoke*, 471 F. App'x 269,

270 (5th Cir. 2012).  It should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff next complained that he was denied legal visits with Adrian Duncan and Gregory

Johnson.   The Fifth Circuit has held that complaints about a "denial of face-to-face meetings with

other prisoners is patently frivolous."  *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988).  It was

noted that such visits "might be of value," but the denial of such visits did not deny inmates

meaningful access to the courts.  *Id.*   To the extent that the Plaintiff presented the claim as a denial

of access to court claim, it should be dismissed as frivolous pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff, however, also presented the denial of legal visit claim in terms of retaliation.  The

Fifth Circuit considered a retaliation claim in the context of limits being placed on access to a law

library in *Jones v. Greninger*, 188 F.3d 322 (5th Cir. 1999).  "To state a valid claim for retaliation

under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Id.* at 324-25 (citations omitted).  It was noted that an inmate must allege more than his personal belief that he was the victim of retaliation. *Id.* at 325.  Conclusory allegations of retaliation are not enough. *Id.*  The Court found that a prisoner was not denied access to court nor the victim of retaliation simply because his access to the law library was limited to five hours a week. *Id.* at 326.  More recently, the Fifth Circuit explained that the retaliation claim in *Jones v. Greninger* failed "because the retaliatory adverse acts did not rise to the level of a constitutional violation." *Morris v. Powell*, 449 F.3d 682, 685 (5th Cir. 2006), *cert. denied*, 549 U.S. 1038 (2006).  To be actionable, the alleged retaliatory act must be more than *de mimimis*. *Id.* at 686.  With respect to the minimum threshold necessary to state a claim, "[r]etaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.*  The Court found that the inmate's claim that he was moved to a less desirable job after filing a grievance was *de minimis*, while transferring him to a less desirable unit was more than *de minimis*. *Id.* at 686-87.

In the present case, the Plaintiff complained that he was no longer afforded a number of privileges involving the law library after his encounter with Defendant Karriker in March 2013.  On the other hand, he acknowledged that many of the privileges he previously had were under a different law librarian.  Karriker testified that she was new to the Coffield Unit and that her predecessor did not strictly enforce the rules.  The Plaintiff's claim that he was the victim of retaliation when Karriker denied his requests for legal visits with other inmates is conclusory.  He failed to show that Karriker would not have denied him the legal visits "but for" a retaliatory intent. *See Woods v. Smith*, 60 F.3d

1161, 1166 (5th Cir. 1995) (inmate must establish that "but for" the retaliatory motive the complained of incident would not have occurred), *cert. denied*, 522 U.S. 995 (1997).   Moreover, the alleged retaliatory adverse act was *de minimis*.   The acts attributed to Karriker would not have deterred a person of ordinary firmness nor the Plaintiff from exercising his constitutional right to file grievances and lawsuits.   Furthermore, the Plaintiff has not shown harm.   He acknowledged that he wanted to speak to inmate Duncan on May 23, 2013 in order to discuss how to file a petition for a writ of certiorari.   By then, the deadline for filing the petition for a writ of certiorari had expired by two months.   The retaliation claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact.   The retaliation claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

It should be added that the Plaintiff regularly focused on whether Karriker or one of the other defendants violated a prison policy.   Violations of prison regulations, without more, do not state a constitutional violation.   *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986).   An assertion that prison officials failed to follow departmental regulations must, on its own merit, state a constitutional claim.   *See Balli v. Haynes*, 804 F.2d 306, 308 (5th Cir. 1986).

The Plaintiff's fourth claim is about being denied double sessions.   To the extent that he presented the claim as a denial of access to court claim, his claim lacks merit because prison officials may place limits on the number of hours he may spend in the law library.   *Jones v. Greninger, supra*.   The claim also fails because he failed to show harm.   To the extent that he is presenting the claim as a retaliation claim, it likewise fails.   Once again, he acknowledged that the practice of allowing inmates to have double sessions was discontinued when Karriker became the new law librarian at the Coffield Unit.   Karriker testified that policy does not provide for double sessions.   That was one of the practices

of her predecessor that she discontinued when she became the law librarian.  She further explained that inmates are scheduled for two hour sessions, but they are permitted to stay an extra hour upon request.  The Plaintiff has routinely been permitted to stay an extra hour.  The retaliation claim lacks merit because the Plaintiff has not shown that Karriker would not have denied him double sessions "but for" a retaliatory motive.  Furthermore, he failed to show that the alleged retaliatory act was more than *de minimis*.  The Plaintiff's fourth claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact.  The fourth claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff's fifth claim is about being denied a legal box.  His legal box was removed in June 2013.  He complained that it was removed one month early.  He noted that he was told that the box was being taken away from him since he did not have an active case in court.  Warden Berger confirmed that inmates must have an active case in order to have a legal box.  The Plaintiff has not shown that he was denied access to court because he did not have access to a legal box.  More specifically, he failed to show that he was unable to pursue a nonfrivolous, arguable legal claim because the legal box was confiscated.  This access to court claim lacks merit.  To the extent that the claim was presented in terms of a retaliation claim, it likewise fails.  Once again, he acknowledged that inmates are not permitted to possess a legal box when they do not have an active case in court.  The Plaintiff has not shown that the legal box would not have been taken "but for" a retaliatory motive.  To the extent he argued that the box was confiscated one month early, he failed to show that the alleged retaliatory act was more than *de minimis*.  The Plaintiff's fifth claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact.  The fifth claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

10

The Plaintiff's sixth claim is that mailroom supervisor failed to timely deliver legal mail.  He noted that he was able to file some objections in his Northern District of Texas case on July 18, 2011.  The Northern District of Texas conducted a *de novo* review regarding the objections that were timely received, and the remainder of the Report and Recommendation was reviewed for plain error.  Once again, however, the Plaintiff has not shown harm, as that concept was defined by the Supreme Court in *Lewis v. Casey*.  He did not show that he was unable to pursue a nonfrivolous, arguable legal claim.  The sixth claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact.  It should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The seventh claim is about the removal of the Supreme Court Digest and Supreme Court Table of Cases from the law library, along with the failure of the prison system to add new books and maintain pocket parts.  The Plaintiff acknowledged that computer based research tools were available, although he noted difficulty using them.  The Fifth Circuit dealt with complaints about resources being removed from a law library in the Texas prison system and found them "unavailing" in *Wyatt v. Thaler*, 405 F. App'x 846, 848 (5th Cir. 2010).  It was noted that the claim lacked merit because the inmate had "not shown that his ability to pursue a nonfrivolous legal claim was hindered by the defendants."  *Id.* (citing *Lewis v. Casey*, 518 U.S. at 351-52).  The law libraries in the Texas prison system are following the trend of law libraries in the free world.  Books are being discontinued in favor of computer based research tools.  The Plaintiff may prefer the old tools, but alternatives are available.  The claim lacks merit because the Plaintiff failed to show the requisite harm in order to proceed.  The seventh claim fails to state a claim upon which  relief may be granted and is frivolous in that it lacks any basis in law and fact.  It should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

11

The final claim is a complaint that Law Librarian Gannon failed to timely provide him with a copy of *Evans v. State* in early 2010.  The claim must be rejected for two reasons.  The first reason is that it is time-barred.  There is no federal statute of limitations for 42 U.S.C. § 1983 actions; the relevant statute of the forum state furnishes the limitations period, but federal law determines the date the accrual commences.  *Owens v. Okure*, 488 U.S. 235 (1989).  The statute of limitations in Texas for § 1983 actions is two years.  *Burrell v. Newsome*, 883 F.2d 416, 419 (5th Cir. 1989);  *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993).  The claim involves matters that occurred in early 2010, while the present lawsuit was not filed until June 13, 2013.  The lawsuit was filed far beyond the two year statute of limitations, thus the final claim is time-barred.  The claim should also be dismissed because it lacks merit since the Plaintiff failed to make the requisite showing of harm.  The eighth claim  fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact.  The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

As a final matter, the claims against Warden Rupert should be dismissed for an additional reason.  He was sued because he was the ultimate supervisor at the Coffield Unit.  The Plaintiff wrote to him and did not receive a response, although a copy of his letter was forwarded to Defendant Karriker.  In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong.  *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).  Warden Rupert was not personally involved in any of the Plaintiff's claims.  The Supreme Court recently held that the term supervisory liability in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  The Court rejected an argument that government officials may be held liable merely because

12

they had knowledge or acquiesced in their subordinate's misconduct.  *Id.*   Citing *Iqbal*, the Fifth

Circuit accordingly held that a prison supervisor was not liable since he was not personally involved

in an incident.  *Sterns v. Epps*, 464 F. App'x. 388, 393 (5th Cir. 2012).  It was reiterated that § 1983

does not create supervisory or respondeat superior liability.  *Id.* at 394.  Warden Rupert may not be

held liable in a civil rights lawsuit just because he was the warden or because the Plaintiff wrote to

him.  The claims against Warden Rupert fail to state a claim upon which relief may be granted and are

frivolous in that they lack any basis in law and fact.  The claims against Warden Rupert should be

dismissed pursuant to 28 U.S.C. § 1915A(b)(1).  It is therefore

      **ORDERED** that the present complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C.

§ 1915A(b)(1).  It is further

      **ORDERED** that all motions not previously ruled on are **DENIED**.

      So ORDERED and SIGNED this 27th day of November, 2013.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE